SOUTHWEST WILLIAMSON COUNTY
COMMUNITY ASSOCIATION, a non-
profit Tennessee corporation

v.

Rodney E. SLATER, in his official capaci-
ty as Secretary of the United States De-
partment of Transportation; Jane F.
Garvey, in her official capacity as Act-
ing Administrator, Federal Highway Ad-
ministration; John Bruce Saltsman, Sr.,
in his official capacity as Commissioner,
Tennessee Department of Transporta-
tion; and James Scapellato.

No. 3:97–0734.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 15, 1997.

Joe Wallace McCaleb, Hendersonville, TN,
for plaintiff.

Michael L. Roden, Nashville, TN; Donald
L. Corlew, Nashville, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

### I. Introduction

This is an action for declaratory and in-
junctive relief to block the construction of
840–South[1] through the Middle Tennessee
counties of Dickson, Williamson and Ruther-
ford pending compliance with certain federal
and state environmental laws.

The Plaintiff, Southwest Williamson Coun-
ty Community Association, Inc., is a Tennes-
see non-profit corporation. The Complaint
alleges that many members of the Associa-
tion live and work in Williamson County and
will be directly impacted by 840–S.

1. The parties dispute whether the road is Inter-
state 840–South or State Route 840–South.

Thus, the Court will refer to the road as 840–
South (840–S).

The Defendants are three federal officials sued in their official capacities—Rodney E. Slater, Secretary of Transportation; Jane F. Garvey, Acting Administrator, Federal Highway Administration; and James Scapellato, Division Administrator, Federal Highway Administration ("Federal Defendants")—and the Tennessee Commissioner of Transportation, John Bruce Saltsman, Sr., in his official capacity ("State Defendant").

## II. Motions to Dismiss

Pending before the Court are Motions to Dismiss filed by the Federal Defendants (Docket No. 6) and the State Defendant (Docket No. 12) to which Plaintiff has filed responses in opposition. A hearing was held on the Motions on September 12, 1997. For the reasons described herein, the Motions to Dismiss are GRANTED.

The Complaint alleges four Counts pertaining to 840-S (Docket No. 1).

Count One alleges that the Federal and State Defendants have violated the Federal Highway Administration ("FHWA") regulations implementing the National Environmental Policy Act ("NEPA"). 42 U.S.C. § 4321 et seq.; 23 C.F.R. § 771. Plaintiff asserts that Defendants have violated certain public hearing requirements and have failed to prepare an Environmental Impact Statement ("EIS").

Count Two alleges that the Federal and State Defendants have violated NEPA. 42 U.S.C. § 4321 et seq. Plaintiff asserts that the Environmental Assessments ("EA") and Findings Of No Significant Impact ("FONSI") issued by Defendants are incorrect and inadequate and that Defendants should have prepared an EIS.

Count Three alleges that the Federal and State Defendants have violated the Intermodal Surface Transportation Efficiency Act ("ISTEA"). 23 U.S.C. § 134 et seq.

Count Four alleges that the Tennessee Department of Transportation ("TDOT") has violated Tenn.Code Ann. § 67–3–121 (specific highway projects benefited by 1986 gasoline

2. The State Defendant asserts that no Federal funds have been used on any portion of 840-S and, therefore, this Court does not have subject

tax increases). This claim is based solely on state law.

The Federal Defendants have moved to dismiss the Complaint on the following grounds: (1) statute of limitations; (2) no justiciable case or controversy; (3) no prospective federal action; (4) standing; (5) no private right of action; and (6) laches. (Docket Nos. 6, 7, and 33).

The State Defendant, likewise, has moved to dismiss the Complaint on the following grounds: (1) lack of subject matter jurisdiction;[2] (2) statute of limitations; (3) no private right of action; and (4) state law not conferring jurisdiction. (Docket Nos. 12, 14, and 35).

Plaintiff has filed briefs in opposition to the Motions to Dismiss (Docket Nos. 15 and 34).

During the pendency of the briefing process, the Sixth Circuit Court of Appeals decided Sierra Club v. Slater, 120 F.3d 623 (6th Cir.1997). The parties have filed supplemental briefs addressing issues raised by Sierra Club.

In considering a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept as true all factual allegations in the complaint. Broyde v. Gotham Tower, Inc., 13 F.3d 994, 996 (6th Cir.1994), cert. denied, 511 U.S. 1128, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994). The motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Id.

A motion to dismiss for failure to state a claim upon which relief can be granted must be viewed in the light most favorable to the party opposing the motion. State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc., 856 F.Supp. 1229, 1232 (S.D.Ohio 1994). The purpose of a motion to dismiss for failure to state a claim is to allow the defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir.1993).

matter jurisdiction. The project is not a "major federal action" under 42 U.S.C. § 4332(c) according to the Defendants.

In other words, in deciding a motion to dismiss, the function of the district court is to test the legal sufficiency of the complaint. *City of Toledo v. Beazer Materials and Services, Inc.*, 833 F.Supp. 646, 650 (N.D.Ohio 1993). The district court is without authority to dismiss claims unless it can be demonstrated beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Id.*

### III. Complaint

The Complaint, filed on July 14, 1997, contains the following matters pertinent to the statute of limitations issue.

Paragraph 9 of Section IV of the Complaint alleges the following facts:

The Defendant TDOT did announce and hold "open-house" type public hearings along the proposed Interstate 840S route beginning in December, 1986, and continuing until April, 1997. The Defendant TDOT did certify to the Federal Highway Administration in writing that the hearings were held in accordance with the applicable regulations and 23 USC 128. Additionally, the State Defendant TDOT did coordinate with Federal Defendants and did issue three NEPA documents, each one entitled Environmental Assessment. Each document was prepared by the Defendant TDOT. One Environmental Assessment prepared by the State Defendant was for Interstate 840S from 1–40W to 1–24 encompassing Dickson, Hickman, Maury, Williamson and Rutherford Counties, Tennessee. A second Environmental Assessment prepared by State Defendant was for Interstate 840S at the proposed interchange with 1–40W in Dickson County and 1–65S in Williamson County for which a Finding of No Significant Impact (FONSI) was issued by the Federal Defendants on May 18, 1990. A third Environmental Assessment prepared by State Defendant was for Interstate 840S at the proposed interchange with 1–24 in Rutherford County and I–40E in Wilson County for which a FONSI was issued by the Federal Defendants on February 13, 1989.

Paragraph 9, thus, alleges that the Defendants issued "three NEPA documents," each "entitled Environmental Assessment" upon which the Federal Defendants issued FONSI's on "May 18, 1990" and on "February 13, 1989." Paragraph 9 further alleges that the State Defendant held 'open house' type public hearings" in "December, 1986, and continuing until April, 1997."

Count One of the Complaint alleges that TDOT held a "corridor hearing" on "March 7, 1989" and a "design hearing" on "April 10, 1997." (Complaint, Section V, ¶¶ 16 and 17[3]). These public hearings were allegedly held in violation of certain procedural requirements of the FHWA regulations implementing NEPA. 23 C.F.R. § 771. Count Two alleges certain actions by the Defendants in February and November of 1989 (Complaint, Section V, ¶ 21).[4]

---

**3.** "16. Plaintiff alleges that the Defendant TDOT violated the public involvement/public hearing procedures and programs mandated by 23 USC 128 and 23 CFR 771.111(h) because it failed to provide reasonable notice to the public and a reasonable time for the corridor hearing held on March 7, 1989, in Williamson County, Tennessee, and at the design hearing held on April 10, 1997, in Williamson County, Tennessee, depriving the public of participation therein; it failed to provide the correct location of the hearing in the Public Notice issued for the design hearing held on April 10, 1997, in the Southwest Williamson County community; and because it willingly and knowingly failed to provide any explanations at any of the public hearings held in Williamson County, Tennessee explicitly contrary to the implementing regulations. 23 CFR 771.11(h)(2)(v)."

"17. Plaintiff alleges that the Defendant TDOT's certification to the Secretary, Department of Transportation that it held a public hearing in accordance with 23 USC 128 on March 7, 1989, and again on April 10, 1997, and that it had considered the 'economic and social effects of the location, its impact on the environment, and its consistency of the goals and objectives of any urban planning as has been promulgated by the community,' is a false and misleading statement because the public hearing was not conducted in accordance with Federal Highway Administration Regulations." (Complaint, ¶¶ 16 and 17).

**4.** "21. Plaintiff alleges that the Build alternatives simply state a number of different alternative routes and the location of each. There is no discussion whatsoever of the various environmental impacts nor economic impacts that might be associated with *each alternative.* Furthermore, Plaintiff alleges that the route alternatives listed in the above-referenced Environmental Assessments are not the same routes which the Defendant TDOT publicly announced as its pre-

The Complaint asserts jurisdiction, in part, based on the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* ("APA"). (Complaint, Section II).

## IV. Counts One and Two

The Defendants have moved to dismiss Count One—Violation of FHWA Implementation Regulations of NEPA—and Count Two—Violation of NEPA—on the ground that the Complaint was not filed within the six year statute of limitations found in 28 U.S.C. § 2401(a). Defendants assert that the statute of limitations runs from the FONSI's issued on May 18, 1990 and February 13, 1989 and, therefore, the Complaint filed on July 14, 1997 is untimely. The only NEPA decisions of the FHWA alleged in the Complaint, according to Defendants, were the FONSI's and the underlying EA's regarding four interchanges.

Plaintiff argues that the statute of limitations has not run because a FONSI is not a final agency action for purposes of the APA. "According to the Federal Highway Administration's (FHWA) implementation of its environmental regulations found at 23 C.F.R. § 771.113, a FONSI, standing alone, is not the final agency action." (Plaintiff's Memorandum, Docket No. 15, at 3). Plaintiff asserts that under 23 C.F.R. § 771.113, final design activities cannot proceed until a FONSI is approved. A design public hearing was held on April 10, 1997. Therefore, the agency decision became final on April 10, 1997.

Plaintiff essentially claims that its cause of action did not accrue until all of the elements of 23 C.F.R. § 771.113 were completed. "Plaintiff's argument continues to be that Plaintiff's cause of action did not accrue until *all* of the elements and conditions required by 23 C.F.R. § 771.113 were met by both the FHWA and the TDOT." (Plaintiff's Response, Docket No. 34, at 6). Plaintiff reads 23 C.F.R. § 771.113 to "expressly mandate *both* a FONSI and 23 U.S.C. § 128 Public Hearing Transcripts and Certifications accepted by the FHWA *before* 'the general

project location and concepts described in the environmental document' are approved." (Plaintiff's Response, Docket No. 34, at 5).

The parties have cited no cases holding that a FONSI is or is not a final agency action under the APA.

The recent Sixth Circuit opinion in *Sierra Club v. Slater*, 120 F.3d 623 (6th Cir.1997) provides helpful guidance in this case. "NEPA does not authorize a private right of action." *Id.* at 630. "The Administrative Procedures Act, however, provides for judicial review of agency action. 5 U.S.C. § 702. We have long recognized that federal courts have jurisdiction over NEPA challenges pursuant to the APA." *Id.* "NEPA itself does not contain a statute of limitations." *Id.* "Like NEPA, the APA does not contain a specific limitations period." *Id.* at 631. The Court then holds:

> It appears to us beyond question that the plaintiffs' action was brought pursuant to the APA; indeed, they do not suggest otherwise. It likewise appears beyond question that the six-year statute of limitations of section 2401(a) applies to actions brought pursuant to the APA. Again, the plaintiffs do not directly suggest otherwise, despite pleading that the statute of limitations should not be applied "mechanically." Mechanical application, however, is generally the sine qua non of a statute of limitations, and while the plaintiffs conclusorily allege malfeasance by the defendants, they do not articulate an equitable-tolling argument.

*Id.*

The *Sierra Club* Court then turned to the question of "when did the plaintiffs' right of action first accrue." *Id.* "Under the APA, a right of action accrues at the time of 'final agency action.' 5 U.S.C. § 704. In determining whether a particular agency action is final, '[t]he core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties.'" *Id.* (quoting *Franklin v. Massachu-*

---

ferred alternative route in November, 1989, stating at that time that the I–840S route beginning with 1–40W and terminating at 1–40E would include Sections A–2, A–3, A–4, V–1, V–2, B–2, C–1a, C–1b, D, E–1, F–2 and G. Plaintiff alleges specifically that Sections A–2, A–3, A–4, V–1, V–

2, C–1a, C–1b were not named nor discussed in the Environmental Assessments and thus the final route chosen by the Defendant TDOT and selected in November 1989 was not the route discussed in the Environmental Assessment prepared in February, 1989."

*setts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 2773, 120 L.Ed.2d 636 (1992)). The Court then holds:

> Although this Court has never addressed the question, it appears well-established that a final EIS or the ROD issued thereon constitute the 'final agency action' for purposes of the APA.

120 F.3d at 631.

In this case, the Court finds that Counts One and Two of the Complaint regarding NEPA are, on their face, barred by the statute of limitations.

The six year statute of limitations found in 28 U.S.C. § 2401(a)[5] applies to the NEPA claims in Counts One and Two since these claims are brought pursuant to the APA.

■ Plaintiff's NEPA claims accrued when the FHWA approved the FONSI's in 1990 and 1989. Approval of the FONSI's was the final agency action from which any claims accrued.

The Complaint was filed more than six years after the FONSI's were issued. Ac-

cordingly, Counts One and Two of the Complaint are time barred.

In *Sierra Club,* the Sixth Circuit held that an Environmental Impact Statement ("EIS") and Record of Decision ("ROD") were final agency action for purposes of the NEPA statute of limitations. In this case, the Defendants issued Environmental Assessments ("EA") and Findings Of No Significant Impact ("FONSI") as an alternative to either an EIS/ROD or a Categorical Exclusion ("CE") procedure. 23 C.F.R. § 771; 40 C.F.R. § 1501.

Under the FHWA regulatory scheme for implementing NEPA, the EA/FONSI procedure is one of three alternative ways to take final agency action. 23 C.F.R. § 771.115[6] provides that there "are three classes of actions which prescribe the level of documentation required in the NEPA process:" EIS's, CE's and EA's.[7] Accordingly, there is no material difference in terms of determining final agency action between the EIS/ROD in *Sierra Club* and the EA/FONSI in this case.

---

5. § 2401. Time for commencing action against United States—(a) Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

6. 771.115 Classes of actions.

There are three classes of actions which prescribe the level of documentation required in the NEPA process:

(a) *Class I (EISs).* Actions that significantly affect the environment require an EIS (40 CFR 1508.27). The following are examples of actions that normally required an EIS:

(1) A new controlled access freeway.

(2) A highway project of four or more lanes on a new location.

(3) New construction or extension of fixed rail transit facilities (e.g., rapid rail, light rail, commuter rail, automated guideway transit).

(4) New construction or extension of a separate roadway for buses or high occupancy vehicles not located within an existing highway facility.

(b) *Class II(CEs).* Actions that do not individually or cumulative have a significant environmental effect are excluded from the requirement to prepare an EA or EIS. A specific list of CEs normally not requiring NEPA documenta-

tion is set forth in § 771.117(c). When appropriately documented, additional projects may also qualify as CEs pursuant to § 771.117(d). (c) *Class III(EAs).* Actions in which the significance of the environmental impact is not clearly established. All actions that are not Class I or II are Class III. All actions in this class require the preparation of an EA to determine the appropriate environmental document required.

7. The Council on Environmental Quality ("CEQ") regulations at 40 C.F.R. §§ 1501.3 and 1501.4 also apply to EA and EIS issues. As the *Sierra Club* Court observed:

Thus, agencies first prepare an 'environmental assessment' (EA) in order to determine whether the project's effect on the environment will be significant enough to warrant a more detailed 'environmental impact statement.' If the agency decides that an environmental impact statement is unnecessary, then it prepares a 'finding of no significant impact,' or FONSI. 'An EA allows the agency to consider environmental concerns, while reserving agency resources to prepare full EIS's for appropriate cases. If a finding of no significant impact is made after analyzing the EA, then preparation of an EIS is unnecessary.'

120 F.3d at 635. (citations omitted). The FHWA's NEPA regulations supplement CEQ's NEPA regulations. 40 C.F.R. § 1507.3 ("each agency shall as necessary adopt procedures to supplement these regulations.")

Both constitute final agency action on the facts presented.

Moreover, the Council on Environmental Quality's regulations on NEPA state:

> It is the Council's intention that judicial review of agency compliance with these regulations not occur before an agency has filed the final environmental impact statement, or has made a final finding of no significant impact (when such a finding will result in action affecting the environment), or takes action that will result in irreparable injury.

40 C.F.R. § 1500.3. The intention of this regulation is that a FONSI is a final agency action subject to judicial review in accordance with the APA.

Plaintiff argues, based on 23 C.F.R. § 771.113,[8] that the statute of limitations ran from a TDOT design hearing on April 10, 1997 and therefore this action is not time barred. Plaintiff asserts that in addition to a FONSI all the requirements of 23 C.F.R. § 771.13, including design hearings and certifications, must occur before there is a final agency action.

Plaintiff's position is directly contrary to the teaching of *Sierra Club*. The *Sierra Club* Court held that an EIS/ROD was a final agency action. Under Plaintiff's interpretation of 23 C.F.R. § 771.113, an EIS/ROD would not be a final agency action until design hearings and certifications are completed since the regulation applies to both the EIS/ROD process as well as the EA/FONSI procedure. The Sixth Circuit unequivocally held otherwise in *Sierra Club*.[9] Accordingly, the Court declines to accept Plaintiff's argument.

This Court's interpretation of how the FHWA's NEPA regulations work is also consistent with the APA. The issuance of the FONSI's constituted "agency action." 5 U.S.C. §§ 701(b)(2) and 551(13). The FONSI's were a "final disposition." 5 U.S.C. § 551(6); 23 C.F.R. §§ 771.115; 771.119 and 771.121; 40 C.F.R. §§ 1501.03, 1501.4, 1508.9 and 1508.13. The right to judicial review accrued at the time of the "final agency action" which, in this case, was the issuance of the FONSI's in 1990 and 1989. 5 U.S.C. §§ 702 and 704. The Complaint was filed in 1997 after the six year statute of limitations had expired. 28 U.S.C. § 2401(a).

For the reasons described above, Counts One and Two of the Complaint are dismissed as time barred by the applicable statute of limitations.[10]

---

**8.** § 771.113 Timing of Administration activities—
(a) The Administration in cooperation with the applicant will perform the work necessary to complete a FONSI or an EIS and comply with other related environmental laws and regulations to the maximum extent possible during the NEPA process. This work includes environmental studies, related engineering studies, agency coordination and public involvement. However, final design activities, property acquisition (with the exception of hardship and protective buying, as defined in § 771.117(d)), purchase of construction materials or rolling stock, or project construction shall not proceed until the following have been completed.

(1)(i) The action has been classified as a categorical exclusion (CE), or
(ii) A FONSI has been approved, or
(iii) A final EIS has been approved and available for the prescribed period of time and a record of decision has been signed;

(2) For actions proposed for FHWA funding, the FHWA Division Administrator has received and accepted the certifications and any required public hearing transcripts required by 23 U.S.C. 128;

(3) For activities proposed for FHWA finding, the programming requirements of 23 CFR part 450, subpart B, and 23 CFR part 630, subpart A, have been met.

(b) For FHWA, the completion of the requirements set forth in paragraphs (a)(1) and (2) of this section is considered acceptance of the general project location and concepts described in the environmental document unless otherwise specified by the approving official. However, such approval does not commit the Administration to approve any future grant request to find the preferred alternative.

(c) Letters of Intent issued under the authority of section 3(a)(4) of the UMT Act are used by UMTA to indicate an intention to obligate future funds for multi-year capital transit projects. Letters of Intent will not be issued by UMTA until the NEPA process is completed.

**9.** Plaintiff seeks to distinguish *Sierra Club* from this case on the ground that the FHWA regulations were amended and, therefore, different versions of 23 C.F.R. § 771.113 apply to *Sierra Club* and this case. The Court does not find this distinction controlling since the *Sierra Club* opinion does not turn on this point.

**10.** The State Defendant has questioned whether a state statute of limitations applies to him rather than 28 U.S.C. § 2401(a). As discussed above,

## V. Count Three

Count Three alleges that the Defendants have violated the Intermodal Surface Transportation Efficiency Act. 23 U.S.C. § 134 *et seq.*

■ No private right of action exists under ISTEA. *Sierra Club v. Pena*, 915 F.Supp. 1381, 1391 (N.D.Ohio 1996), affirmed by *Sierra Club v. Slater*, 120 F.3d 623 (6th Cir.1997).

Accordingly, Count Three of the Complaint based on ISTEA is dismissed for failure to state a claim upon which relief can be granted.

## VI. Count Four

Count Four against the State Defendant is based solely on Tennessee law. Tenn.Code Ann. § 67–3–121. The Court, having dismissed all federal claims, declines to take supplemental jurisdiction over the state law claim in Count Four. 28 U.S.C. § 1367(c). Accordingly, Count Four is dismissed without prejudice.

## VII. Conclusion

For the foregoing reasons, the Motions to Dismiss (Docket Nos. 6 and 12) are GRANTED and this case is DISMISSED.

It is so ORDERED.

*Sierra Club* held that there is no private right of action under NEPA and that all NEPA actions are based on the APA. Thus, since all NEPA actions are brought pursuant to the APA, the Federal APA statute of limitations would apply to all Defendants.